IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 10, 2007

## TYRONE A. WALKER v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Fayette County**
**No. 5492     J. Weber McCraw, Judge**

**No. W2006-02035-CCA-R3-PC  - Filed June 26, 2007**

The petitioner, Tyrone A. Walker, appeals the denial of his petition for post-conviction relief, arguing that his guilty pleas were unknowing and involuntary and that his trial counsel was ineffective for failing to request an independent psychological examination. Following our review, we affirm the denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and DAVID G. HAYES, J., joined.

Karen T. Fleet, Bolivar, Tennessee, for the appellant, Tyrone A. Walker.

Robert E. Cooper, Jr., Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; D. Michael Dunavant, District Attorney General; and Terry D. Dycus, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### FACTS

On March 22, 2004, the Fayette County Grand Jury indicted the petitioner and two codefendants, Pauline Rivers and Cornelius Marshall, on two counts of attempted first degree murder and one count of aggravated arson, Class A felonies. Following several mental evaluations and a final determination that he was competent to stand trial, the petitioner pled guilty on March 14, 2005, to two counts of attempted first degree murder, a Class A felony, and one count of arson, a Class C felony, in exchange for concurrent sentences as a Range I offender of twenty-five years for each of the attempted murder convictions and six years for the arson conviction, for an effective twenty-five-year sentence in the Department of Correction.

The transcript of the guilty plea hearing reveals that Rivers paid the petitioner and Marshall to set fire to the Moscow residence of two elderly victims. Among the evidence the State would have presented at trial was the testimony of an investigator that the victims' house was doused with a flammable liquid and that a plastic milk jug containing the remnants of gasoline was found at the scene; the surveillance videotape of a nearby convenience store, which showed that approximately twenty-five to thirty minutes before the fire was set Marshall, accompanied by the petitioner, purchased two plastic gallons of milk, poured out the milk, and refilled the plastic jugs with gasoline; and the statements of the petitioner and Rivers, each of whom confessed his or her participation in the crime.

On February 28, 2006, the petitioner filed a *pro se* petition for post-conviction relief, alleging that his guilty pleas were unknowing and involuntary and that he received ineffective assistance of counsel. Specifically, the petitioner argued, among other things, that his trial counsel should have requested an independent psychological evaluation and a hearing to determine his competency to stand trial. He further argued that, in light of his mental problems, his trial counsel and the trial court should have taken greater care during his plea colloquy to ensure that he understood exactly what he was doing in entering his pleas.

Post-conviction counsel was appointed and an evidentiary hearing held on July 17, 2006. Trial counsel testified that he was licensed to practice law in 2000 and was appointed to represent the petitioner in September 2004. At the time he was appointed, the petitioner had previously been represented in the same case by at least one other attorney. Among other things, trial counsel spoke with Officer Rick Wilson, the investigating officer; reviewed the affidavit of complaint; and met with the petitioner "on numerous occasions" to discuss the case. Trial counsel agreed that the petitioner had given a statement to police admitting his involvement in the crimes. He did not recall asking Officer Wilson why the admonition of rights form contained the petitioner's stricken signature, initialed by Officer Wilson, on the line indicating that the petitioner did not wish to make a statement. He also did not recall the petitioner's having ever informed him that he had been threatened by his codefendant, Cornelius Marshall. Trial counsel testified that he did not know if Marshall was larger than the petitioner but assumed he probably was because the petitioner was not a very big man.

Trial counsel testified that he did not obtain any of the petitioner's school records. He said, however, that he understood that the petitioner was "a little slow" and that it would not surprise him to learn that the petitioner had taken "resource classes" in school. He testified that the petitioner did not appear to be mentally retarded, and he did not remember if he knew that the petitioner's IQ was 70. However, he "seem[ed] to recall something in the file to that effect." He said that the petitioner did not appear to him to be mentally ill. He stated that he did not recall anyone indicating to him that the petitioner was taking psychotropic medication and that it would be news to him to learn that the petitioner was on Haldol and Cogentin at the time he entered his pleas. His file did not indicate whether he spoke with any of the psychologists who examined the petitioner, and he did not speak with the petitioner's family about the petitioner's mental health history. Trial counsel acknowledged

that the petitioner was not the leader in the offense but said that he did not gather from his conversations with him that the petitioner could be easily led.

Trial counsel testified that he went over the guilty pleas with the petitioner three or four times, which included reading the guilty plea form aloud to him. In his opinion, the petitioner fully understood the nature and consequences of the pleas, and he had no concerns that the petitioner did not understand exactly what he was doing at the time he entered the pleas. Trial counsel acknowledged, however, that the petitioner initially expressed confusion to the trial court at the plea colloquy, informing the court that he had a "really bad mental problem." He said that the trial court took a break to allow him to go over the plea with the petitioner again and that the petitioner thereafter entered his pleas without incident.

Trial counsel acknowledged the record in the case reflected the following: Previous trial counsel filed a motion on April 14, 2004, requesting a psychological evaluation; the petitioner was evaluated by Pathways Behavioral Health Services, which recommended that he be referred to Western Mental Health Institute for further inpatient evaluation; and Western Mental Health Institute determined that the petitioner was competent to stand trial and that a defense of insanity could not be supported. Trial counsel further agreed that the Western Mental Health Institute staff also recommended that the petitioner receive continued competency assessments and treatment while in jail awaiting trial.

Following the petitioner's return to jail, the staff psychiatrist at Pathways Behavioral Health Services wrote a letter to the trial court stating that the petitioner had again been determined to be incompetent and recommending that he be referred back to Western Mental Health Institute to be reevaluated for competency to stand trial and for malingering. Trial counsel acknowledged that, as a result of that letter, he had filed a motion on October 26, 2004, requesting that the trial court declare the petitioner incompetent to stand trial. As a result, the petitioner was readmitted to Western Mental Health Institute for an inpatient evaluation of his competency to stand trial and for a determination of whether he was malingering. At the conclusion of that evaluation, the Western Mental Health Institute reported to the trial court that the petitioner had been determined to be competent to stand trial and that the malingering probability scale indicated a 99.9% probability that he was malingering. Trial counsel acknowledged that he did not request funds for an independent psychological examination but said he believed that it would have been unlikely to change the outcome of the case.

On cross-examination, trial counsel testified that he met with the petitioner's previously appointed attorney to discuss the motions that attorney had filed in the case. He said he also discussed the petitioner's prior convictions and mental status with the public defender who had represented the petitioner in various cases in juvenile court. Trial counsel agreed that there was no guarantee that the trial court would have approved funds for independent psychological testing or that an independent psychologist or psychiatrist would have reached a different conclusion with respect to the petitioner's competency. He testified that the petitioner was always engaging and involved in his conversations with him, asking relevant questions and suggesting possible defenses,

including an alibi defense. However, when he informed the petitioner that he would have to give notice to the State of a possible alibi, the petitioner lost interest in that defense.

Trial counsel testified that he went over everything with the petitioner, including the charges against him and the fact that an aggravated arson sentence carried a day-for-day sentence. He said that the petitioner clearly understood the possible day- for- day sentence and that it was of paramount importance in his decision to plead guilty to the lesser offense of arson. Trial counsel stated that the petitioner and his two codefendants had all given statements to the police implicating each other. In addition, the petitioner admitted in his conversations with him that he had committed the crimes in exchange for the money that Rivers paid him. Trial counsel reiterated that he had no doubt that the petitioner understood exactly what he was doing in pleading guilty.

Patricia Walker, the petitioner's older sister, testified that the petitioner was mentally retarded and had taken special education classes. She said that he did not read very well and that she or her sisters had always accompanied him whenever he appeared in court on previous cases. In this case, however, trial counsel never contacted her or her family, and she did not learn of the petitioner's guilty pleas until after they were already entered. Walker testified that the petitioner was easily led and that others often got him into trouble. On cross-examination, she acknowledged that the petitioner had pled guilty to various offenses in the past and had a fairly good understanding of the court system. She identified the petitioner's signature on the Fayette County Jail medication dispensing log, which indicated that the petitioner had been regularly taking Lexapro, Zyprexa, Trazodone, and Dihydramine at the time he entered his pleas and had not been on Haldol or Cogentin. Finally, she acknowledged that the petitioner was not currently incarcerated in a special needs facility.

Shana McCoy-Johnson testified that she was employed at the District Public Defender's Office for the Twenty-Fifth Judicial District and had represented the petitioner in various juvenile court proceedings. She said that the petitioner was "slow" and that his sister, Patricia, usually accompanied him to court. She stated that the petitioner's sister telephoned her about the instant case, and she referred her to trial counsel but did not know whether she ever talked to him. She agreed that it probably would have been a good idea for trial counsel to request funds for an independent psychological examination but said that resources were limited in appointed cases, and she did not think it likely that the judge would have approved the request. On cross-examination, McCoy-Johnson testified that even if funds had been approved, she doubted that an independent evaluation would have changed the outcome of the proceedings. She said she was very familiar with the facts of the case, having represented the petitioner's codefendant, Rivers, while the case was at the general sessions court level. In her opinion, the State's proof was "[o]verwhelming" and the petitioner received "a good and fair deal."

On July 24, 2006, the post-conviction court entered an order denying the petition for post-conviction relief, finding that the petitioner had failed to show that his pleas were unknowing or involuntary or that he received the ineffective assistance of counsel. Thereafter, on August 16, 2006, the petitioner filed a timely notice of appeal to this court.

## ANALYSIS

On appeal, the petitioner raises the interrelated issues of whether the post-conviction court erred in finding that his guilty pleas were knowing and voluntary and that he received the effective assistance of counsel. The post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f) (2006). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996). Where appellate review involves purely factual issues, the appellate court should not reweigh or reevaluate the evidence. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997). However, review of a trial court's application of the law to the facts of the case is *de novo*, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998).

The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed *de novo*, with a presumption of correctness given only to the post-conviction court's findings of fact. Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); Burns v. State, 6 S.W.3d 453, 461 (Tenn. 1999). To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee cases). The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687, 104 S. Ct. at 2064.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688, 104 S. Ct. at 2065; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the test is satisfied by showing a reasonable probability, *i.e.*, a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. In the context of a guilty plea, the petitioner must show a reasonable probability that were it not for the deficiencies in counsel's representation, he would not have pled guilty but would instead have insisted on proceeding to trial. Hill v. Lockart, 474 U.S. 52, 59, 106 S. Ct. 366, 370 (1985); House v. State, 44 S.W.3d 508, 516 (Tenn. 2001).

Because both prongs of the test must be satisfied, a failure to show either deficient performance or resulting prejudice results in a failure to establish the claim. See Henley, 960 S.W.2d at 580. For this reason, courts need not approach the Strickland test in a specific order or even "address both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697, 104 S. Ct. at 2069; see also Goad, 938 S.W.2d at 370 (stating that "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

The petitioner contends that trial counsel was ineffective for failing to request an independent psychological examination or a competency hearing. He further contends that in light of his low IQ and history of mental problems, both the trial court and his trial counsel should have questioned him more closely to ensure that his guilty pleas were knowing and voluntary. The record, however, fully supports the post-conviction court's finding that the petitioner received effective assistance of counsel and that his guilty pleas were knowingly, voluntarily, and intelligently entered.

Trial counsel's testimony, which was accredited by the post-conviction court, established that he went over the plea agreement with the petitioner three or four times prior to the guilty plea hearing and once again during the hearing. The petitioner was involved and engaged in his conversations with trial counsel and indicated that he understood the plea agreement and wished to plead guilty. Trial counsel filed a motion requesting that the trial court declare the petitioner incompetent, which resulted in the petitioner's reevaluation at Western Mental Health Institute, where it was determined that he was competent to stand trial and that there was a 99.9% probability that he was malingering. Neither trial counsel nor Public Defender McCoy-Johnson, who was familiar with both the petitioner and the facts of the case, thought it likely that an independent psychological examination following that determination would have changed the outcome of the proceedings. McCoy-Johnson, in fact, testified that she thought it unlikely that the trial judge who presided over the case would have even approved funds for independent psychological testing. The petitioner has not, therefore, met his burden of demonstrating either that trial counsel was deficient for failing to request an independent psychological examination or competency hearing or that he was prejudiced as a result of counsel's failure to do so.

The petitioner also contends that his guilty pleas were not knowingly, voluntarily, or intelligently entered. Before a guilty plea may be accepted, there must be an affirmative showing that the petitioner voluntarily and knowingly entered the plea. Boykin v. Alabama, 395 U.S. 238, 242, 89 S. Ct. 1709, 1711 (1969); State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999). A plea is not voluntary if it results from ignorance, misunderstanding, coercion, inducements, or threats. Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993). The trial court must determine if the guilty plea is knowing by questioning the defendant to make sure he or she fully understands the plea and its consequences. Pettus, 986 S.W.2d at 542; Blankenship, 858 S.W.2d at 904.

Because the plea must represent a voluntary and intelligent choice among the alternatives available to the defendant, the trial court may look at a number of circumstantial factors in making this determination. Blankenship, 858 S.W.2d at 904. These factors include: (1) the defendant's

relative intelligence; (2) his familiarity with criminal proceedings; (3) whether he was represented by competent counsel and had the opportunity to confer with counsel about alternatives; (4) the advice of counsel and the court about the charges against him and the penalty to be imposed; and (5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial. Id. at 904-05.

The petitioner asserts that, in light of his history of mental problems and mild mental retardation, the trial court and his trial counsel should have questioned him more thoroughly about his understanding of the pleas. With respect to this claim, the post-conviction court made the following findings of fact and conclusions of law:

The Court finds that the [petitioner] actually understood the significance and consequences of the particular decision to plea[d] guilty and the decision was not coerced. The [petitioner] was fully aware of the direct consequences of the plea, including the possibility of the sentence actually received. He was informed at the plea hearing of the sentence. The record further indicates that the [petitioner] maintained his mental health issues during the plea proceeding, at times quite timely and eloquently stating his mental issues. The records further reveal that the Court stopped the plea proceeding because of the [petitioner's] refusal to answer basic questions and the Court's concern for [the petitioner's] understanding of simple questions. The record indicates that after a recess and after being told by the Court that the plea would be stopped if he could not understand the proceedings, the [petitioner] was then easily able to answer questions that he purportedly could not earlier understand, consistent to the malingering concern raised by each mental health evaluator.

The record fully supports these findings and conclusions of the post-conviction court. Following the petitioner's return to the courtroom after his protestation that he had a "really bad mental problem," he responded appropriately during the lengthy and detailed plea colloquy in which the trial court questioned him closely about his understanding of the charges, his constitutional rights, the ramifications of pleading guilty, and the voluntariness of his pleas. The record further reveals that, at the time he entered the pleas, the petitioner had already pled guilty to various other offenses in the past and was therefore experienced with the criminal justice system. We, therefore, conclude that the post-conviction court did not err in finding that the petitioner's guilty pleas were knowingly, intelligently, and voluntarily entered.

## CONCLUSION

Based on our review, we conclude that the petitioner has failed to show either that trial counsel was ineffective or that his guilty pleas were unknowing and involuntary. Accordingly, we

affirm the denial of his petition for post-conviction relief.

_____
ALAN E. GLENN, JUDGE